UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SUSAN MASSEY and WILLIAM SCOTT   )
MASSEY,   )
   )
        Plaintiffs,   )
   )     No. 1:05-CV-249
v.   )
   )     Chief Judge Curtis L. Collier
DETECTIVES D.L. HESS and KATHLEEN   )
OELSCHLEGEL, individually   )
and as members of the Prince William County,  )
Virginia, Police Department; OFFICER JASON)
WAGNON, OFFICER CURTIS MORRIS and  )
OFFICER KEITH JENNINGS, individually   )
and as officers and employees of the   )
Chattanooga Police Department; and the   )
CITY OF CHATTANOOGA, TENNESSEE,   )
   )
        Defendants.   )

## MEMORANDUM

Plaintiffs Susan Massey ("Plaintiff") and her husband, William Scott Massey, filed suit

against Defendants D. L. Hess and Kathleen Oelschlegel, individually and in their capacities as

officers of the Prince William County, Virginia, Police Department (collectively, "Virginia

Defendants"), Jason Wagnon, Curtis Morris, and Keith Jennings, individually and in their capacities

as officers of the Chattanooga, Tennessee, Police Department (collectively, "Chattanooga

Defendants"), and the City of Chattanooga, Tennessee ("City"). The Virginia Defendants filed a

motion for summary judgment (Doc. No. 74) and memorandum in support (Doc. No. 75), to which

Plaintiff and her husband filed responses (Doc. Nos. 86 & 87).[1] The Chattanooga Defendants and

---

[1]In Plaintiff's response to the summary judgment motion, she contends summary judgment
is generally an unconstitutional violation of the Seventh Amendment (Doc. No. 86, p. 8). The Court

City also filed a motion for summary judgment (Doc. No. 82) and memorandum in support (Doc. No. 83), to which Plaintiff and her husband filed untimely responses (Doc. Nos. 90 & 91).  The Court did not consider Plaintiff's and her husband's untimely responses.[2]

For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** the Virginia Defendants' motion for summary judgment and **DISMISS** all claims against Defendant Hess.  The Court will **GRANT IN PART** and **DENY IN PART** the motion for summary judgment filed by the Chattanooga Defendants and City.

## I.  RELEVANT FACTS

Plaintiff and her husband, residents of Hamilton County, Tennessee, had been foster parents in Tennessee for several years, taking care of two severely physically-disabled and mentally-handicapped children (Doc. No. 1, pp. 1-2).  In November 2004, one of the children died.  Two weeks later, the second child died while the family was in Virginia (*id.*; Doc. No. 86, p. 2).  That death prompted the Virginia Defendants, who are detectives employed by the Prince William County, Virginia, Police Department, to visit Plaintiffs in Hamilton County (Doc. No. 1, p. 2; Doc. No. 75, p. 2).

On the morning of December 16, 2004, the Virginia Defendants went to Plaintiff's home and

---

rejects such contention.  *Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006) (holding that Fed. R. Civ. P. 56 does not violate the Seventh Amendment).

[2]Although the Court did not consider the untimely responses, this did not affect the Court's analysis because the untimely responses contain mostly the same content as Plaintiff's timely responses, including the exact same three (and only three) case citations, two of which merely explain the summary judgment standard.  Thus, the substance of Plaintiff's response was before the Court.

told Plaintiff and her husband they needed to interview them regarding the child's death in Virginia (Doc. No. 1, p. 2; Doc. No. 16, p. 2; deposition of Susan Massey ["Massey dep."],[3] pp. 32-34). The Virginia Defendants were in plain clothes and were accompanied by Eunice Lackey, an investigator from the Tennessee Department of Child Services[4] (Massey dep., pp. 32-33, 43). The Virginia Defendants asked to interview Plaintiff first (*id.* at p. 33; Doc. No. 75, Exh. 3 ["Hess affidavit"], p. 4; Doc. No. 75, Exh. 4 ["Oelschlegel affidavit"], p. 4). She said "okay" and rode with either the Virginia Defendants or Ms. Lackey to a building to be interviewed (Doc. No. 1, p. 2; Doc. No. 16, p. 2; Massey dep., p. 33; Lackey affidavit, p. 4). Although the building is locked from the outside, there are no restrictions on exiting (Massey dep., p. 125-26; Hess affidavit, p. 5; Oelschlegel affidavit, p. 5).

Plaintiff, who was 38 years old at the time, was questioned by the Virginia Defendants for eight hours (Massey dep., pp. 35-36, 38, 48). Because they were police officers, Plaintiff thought she was not allowed to leave but they never told her she could not leave (Doc. No. 1, p. 2; Massey dep., pp. 43, 128; Hess affidavit, p. 6). Defendant Oelschlegel did most of the questioning; as the questioning became more intense, with accusations that Plaintiff wilfully harmed her recently deceased daughters, Plaintiff became distraught and locked herself in a bathroom (Doc. No. 1, pp. 2-3; Massey dep., pp. 37-39, 126). When she emerged from the bathroom, Defendant Hess asked Plaintiff if she wanted to finish the interview at another time, but Plaintiff told them to continue (*id.* at p. 41). Defendant Oelschlegel had been asking most of the questions all day, and Plaintiff was

---

[3]Various pages of Plaintiff's deposition, all numbered according to same page numbering scheme, are contained in Doc. No. 75, Exh. 1; Doc. No. 83, pt. 2; and Doc. No. 86, pts. 2-6.

[4]Ms. Lackey is not a defendant in this case.

irritated at her questioning, so she turned her chair so her back faced Defendant Oelschlegel (*id.* at p. 45). To defuse the tension, Defendant Hess began asking the questions, which Plaintiff preferred (*id.*). On the occasions when Defendant Oelschlegel interjected, Plaintiff ignored her (*id.*).

After Defendant Hess told Plaintiff he had no more questions, Plaintiff decided to leave the building (*id.* at pp. 46, 52). The Virginia Defendants told Plaintiff they would call her husband to pick her up, but she declined and said she was going to a friend's house (*id.* at p. 48; Oelschlegel affidavit, p. 6). Plaintiff repeatedly told the Virginia Defendants she wanted to be left alone (Massey dep., p. 48). After eight hours of often accusatory questioning, she was having trouble controlling her emotions and wanted to get away from the Virginia Defendants (*id.*). Specifically, she felt Defendant Oelschlegel was harassing her (*id.* at p. 53).

Plaintiff started walking down the stairs to exit the building when, she says, Defendant Oelschlegel "came chasing me down" to tell her that she should ride home with the detectives (*id.*, p. 46). Plaintiff refused, saying, "I don't want anything to do with you people. Leave me alone" (*id.*). As Plaintiff turned away to continue exiting, Defendant Oelschlegel grabbed Plaintiff's sweater (*id.*). Plaintiff asked if she was being arrested, and Defendant Oelschlegel let go (*id.*). Plaintiff was not injured and she left the building (*id.* at pp. 46, 126).

Because Plaintiff would not ride home with the Virginia Defendants, Defendant Hess called Plaintiff's husband and arranged for him to pick up his wife (Doc. No. 83 #2 Supplement ["William Scott Massey dep."], pp. 55-57; Hess affidavit, p. 6). Plaintiff's husband told Defendant Hess to follow her, so he would know where his wife was, so the Virginia Defendants followed Plaintiff in their police vehicle as she walked along the street outside the building (William Scott Massey dep., p. 57; Hess affidavit, pp. 6-7; Oelschlegel affidavit, pp. 6-7).

The Virginia Defendants and child services investigator believed Plaintiff was extremely agitated, acting erratically and crying uncontrollably (Lackey affidavit, p. 6; Hess affidavit, p. 7; Oelschlegel affidavit, p. 8). Indeed, Plaintiff says that as she walked down the sidewalk, passerbys asked if she was ok because she was "crying so hard I can hardly see," as a result of having spent the day being interrogated (Massey dep., pp. 57, 61). The Virginia Defendants thought Plaintiff was approaching strangers in the street seeking a ride and at one point thought she was almost hit by a car (Hess affidavit, p. 7; Oelschlegel affidavit, pp. 6-7; Lackey dep., pp. 6-7). However, Plaintiff insists she merely asked people in a vehicle if they knew when a public transit bus would come (Massey dep., pp. 49-50). Concerned about Plaintiff's safety, the Virginia Defendants asked Ms. Lackey to contact the Chattanooga police (Lackey dep., pp. 6-7; Oelschlegel affidavit, p. 7; Hess affidavit, p. 8).[5] Plaintiff soon boarded a bus, glad to finally be free of the Virginia Defendants (Massey dep., pp. 50-51, 166). But the bus was soon stopped by Chattanooga police cars (*id*. at pp. 51, 166).

The Chattanooga Defendants had responded to a call that "a woman was extremely distraught and needed to be taken into protective custody" (Doc. No. 83, Exh. 4 ["Jennings affidavit"], p. 1; Exh. 7 ["Morris affidavit"], p. 1; Exh. 8 ["Wagnon affidavit"], p. 1). They boarded the bus along with Defendant Oelschlegel (Massey dep., p. 172). The Chattanooga Defendants describe Plaintiff as being distraught and crying, and they believed she was a danger to herself (Morris affidavit, p. 1; Doc. No. 86, Exh. 4 ["incident report"], p. 3). Upon boarding the bus,

_____

[5]The Virginia Defendants' concerns were heightened because they believed Plaintiff had a history of mental illness (Hess and Oelschlegel affidavits, pp. 2-3). The Virginia Defendants do not state how they learned this information, and it does not meet the requirement of Fed. R. C. P. 56(e) that affidavits be based on personal knowledge, although it does help explain the Virginia Defendants' state of mind.

Defendant Wagnon told Plaintiff, "Get off the bus, don't make us hurt you" (Massey dep., p. 178). She responded, "Since when is it a crime to ride a bus?" (Massey dep., p. 170). The officer then started trying to "grab" her, which she resisted (*id*. at pp. 170, 182). Defendant Wagnon characterized his action as attempting to escort Plaintiff off the bus (Wagnon affidavit, p. 2). He contends Plaintiff resisted by "grabbing my hands and pulling away" (incident report, pp. 2-3). Defendant Oelschlegel claims Plaintiff punched her and struck the Chattanooga Defendants with her fists and legs (Oelschlegel affidavit, pp. 7-8). Plaintiff acknowledges she was "flailing" her arms and legs but denies intentionally hitting any officers (Massey dep., pp. 184-85).

After repeated attempts to remove Plaintiff from the bus, Defendant Wagnon used a taser on Plaintiff (Jennings affidavit, p. 1; Morris affidavit, p. 2; Wagnon affidavit, p. 2; incident report, p. 3). Defendant Morris then used his taser on Plaintiff several times until the officers were able to handcuff Plaintiff (Jennings affidavit, p. 2; Morris affidavit, p. 2; incident report, p. 3). During this incident, Defendant Oelschlegel helped the Chattanooga Defendants take custody of Plaintiff (Massey dep., pp. 53-54). Defendant Hess never boarded the bus (*id*. at p. 54; Lackey affidavit, p. 7; Oelschlegel affidavit, p. 9).

After being carried off the bus Plaintiff was taken to a mental health facility and then to a hospital because of injuries sustained while being handcuffed and removed from the bus (Massey dep., p. 62). As a result of the taser being applied repeatedly, Plaintiff was shaking back and forth so much that she was unable to answer hospital employees' questions and the employees speculated she was on drugs (*id*. at p. 63). No charges have been brought in connection with the children's deaths (Doc. No. 1, p. 2; Doc. No. 16, ¶ 2).

Plaintiff alleges "all defendants" violated her rights under 42 U.S.C. § 1983 (Doc. No. 1, p.

6, pt. VII). Specifically, she contends the officers committed "false arrest, false imprisonment, and a knowing and intentional violation of Plaintiff's rights as guaranteed under the fourth, fifth, eighth and fourteenth amendments to the United States Constitution as to be free from unnecessary and illegal arrest and the use of unnecessary force under color of state law as guaranteed citizens by the provisions of 42 USC 1983, et seq." (Doc No. 1, p. 4, pt. V). In addition, Plaintiff seeks "damages" under 42 U.S.C. § 1988 (*id.* at p. 6, pt. VII). She also contends "the Defendants" violated Tennessee statutes prohibiting assault, aggravated assault, false arrest and imprisonment, and official oppression, and such violations constitute negligence *per se* (*id.* at p. 6), and the "defendants" committed common law assault, battery, false arrest, and false imprisonment (*id.* at p. 7).

Plaintiff's husband, William Scott Massey, seeks damages for the medical costs of alleviating Plaintiff's pain and suffering and also damages for depriving "him of the value of the comfort and society" of his wife (*id*. at p. 7, pt. XII).[6] Plaintiff and her husband seek $750,000 in compensatory damages, $550,000 in punitive damages, and attorney's fees and costs (*id.* at p. 8).

## II.    STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden rests on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349

---

[6]William Scott Massey states his claims rely on the success of Plaintiff's claims, so his responses to the motions for summary judgment (Doc. Nos. 87 & 91) incorporate Plaintiff's responses.

F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party must demonstrate the absence of a genuine issue of material fact, but the non-movant is not entitled to a trial solely on the basis of its allegations. The non-movant must submit significant probative evidence to support its claim, and from which a jury could find for the non-movant. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party is entitled to summary judgment if the non-movant fails to make a satisfactory showing on an essential element of its case for which it bears the burden of proof. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 252; *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.   DISCUSSION

### A.  Claims under 42 U.S.C. § 1983

Plaintiff sued under 42 U.S.C. § 1983 for alleged violation of her rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Section 1983 allows a person to sue to vindicate the deprivation of constitutional rights. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

To establish liability under § 1983, Plaintiff must demonstrate: (1) she was deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a

person acting under the color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

## 1. Acting under color of law

Though it has not been expressly raised as a defense, the Court must first examine whether the defendants were acting under color of law. *See Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) (holding that district court erred by accepting defendant's stipulation he acted under color of law). This issue is important because the Virginia Defendants did not have any police authority in Chattanooga.

State actors who exceed their authority can still be acting under color of law because the term applies more broadly than the mere authority to act. *Screws v. United States*, 325 U.S. 91, 110-11 (1945) (defining "under color of law" as acting under "pretense" of law). The key determinant is whether the defendant intends to act in an official capacity or to exercise official responsibilities pursuant to state law. *West v. Atkins*, 487 U.S. 42, 50 (1988); *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). The conduct must also relate "in some meaningful way either to the actor's governmental status or to the performance of his duties." *Waters*, 242 F.3d at 359. Put another way, the conduct allegedly causing the deprivation of a constitutional right must be "fairly attributable" to the state, either because the actor is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Applied to police officers, "it is the nature of the act performed which determines whether the officer has acted under color of law." *Neuens*, 303 F.3d at 670 (citing *Stengel v. Belcher*, 522 F.2d 438, 440 (6th Cir.

9

1975)). When a police officer purports to exercise official authority, he has acted under color of law. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) (*citing Waters*, 242 F.3d at 359). "Such manifestations of official authority include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations." *Id.* In contrast, officers do not act under color of law when their acts are in "the ambit of their personal pursuits." *Monroe v. Pape*, 365 U.S. 167, 185 (1961); *Waters*, 242 F.3d at 359.

In an unpublished decision, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") held that an officer acted under color of law when he traveled to another state in which he had no legal authority while on duty, in uniform, and carrying out his assignment of locating escaped prisoners. *Martin v. Harris*, No. 87-5596, 1988 U.S. App. LEXIS 3419, *3, 1988 WL 24227, *1 (6th Cir. Mar. 17, 1988). In *Rambo v. Daley*, 851 F. Supp. 1222, 1226 (E.D. Ill. 1994), a district court analyzed cases where police officers acted outside the scope of their authority and discerned a rule that an active-duty police officer who acts like a police officer is acting under color of state law even if he is outside his jurisdiction. *See also Barna v. City of Perth Amboy*, 42 F.3d 809, 817 (3d Cir. 1994) (officers were not acting under color of law when they were off-duty, outside their jurisdiction, and involved in a personal dispute); *but see Firman v. Abreu*, 691 F. Supp. 811, 813 (S.D.N.Y. 1988) (holding that the principle of acting under color of state law "can have no application, where, as here, the official has no colorable authority to act in the jurisdiction in which he purports to act," especially where the plaintiff did not believe the defendant was acting under color of law).

Here, there is no doubt the Chattanooga Defendants, acting as police officers in their own

city, were acting under color of law. Based on the Court's understanding of the relevant facts, the Court concludes the Virginia Defendants were acting under color of law, too. They were acting in the course of their official duties, investigating a possible crime for which they had jurisdiction in Virginia. The Virginia Defendants, in arguing a different point, note Prince William County trained them for their job, paid their salaries and travel expenses to Chattanooga, equipped them with a government car, uniforms and badges, and "exercised control and direction" over their investigation (Doc. No. 75, p. 25). Plaintiff agreed to be interviewed because she knew they were police officers and she thought she should follow their directions. At one point, she asked if she was under arrest, which further shows the Virginia Defendants presented themselves to Plaintiff as police officers. Anything Plaintiff said or did during the interview could have been used as evidence if the Virginia Defendants chose to bring criminal charges against her. As in *Martin*, the police were outside their jurisdiction only because their official duties in this investigation required them to leave the state. Regardless of the fact they lacked official jurisdiction, the Virginia Defendants were on-duty, investigating a possible crime, and representing themselves as police officers. Thus, they were acting under color of law.

### 2. Violations of the Fourth Amendment

Since Plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure, her claim arises under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Specifically, Plaintiff has alleged excessive force and false arrest claims. The Fourth Amendment protects against unreasonable seizures.[7] Thus, Fourth Amendment

---

[7] " The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. Amend. IV. The Fourth Amendment is made applicable to state and local governments by the Fourteenth Amendment.

allegations of excessive force and false arrest require a seizure. *See Florida v. Royer*, 460 U.S. 491, 498 (1983) ("If there is no detention -- no seizure within the meaning of the Fourth Amendment -- then no constitutional rights have been infringed.").

A seizure occurs when a reasonable person would not feel free to leave an encounter with the police. *Florida v. Bostick*, 501 U.S. 429, 439 (1991); *United States v. Campbell*, 486 F.3d 949, 956 (6th Cir. 2007); *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (6th Cir. 2005). In a typical seizure, this occurs when a government actor has, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." *Graham*, 490 U.S. at 395 n.10 (*citing Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)). There must be "a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007); *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998); *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006) (internal emphasis omitted).

Because Plaintiff's interactions with the Virginia Defendants lasted a number of hours and involved multiple interactions, there are three distinct occurrences when Plaintiff may have been seized. Therefore, the Court will consider in turn each of Plaintiff's interactions with the Virginia Defendants, as well as her single interaction with the Chattanooga Defendants.

First, Plaintiff's encounter with the Virginia Defendants began when they came to her home and brought her to a building to be interviewed. This was a voluntary encounter, not a seizure. Plaintiff agreed to go with the Virginia Defendants because she thought it proper to answer questions, given that her child had died in the Virginia Defendants' jurisdiction. By itself, police questioning is not a seizure. *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984). "While most citizens will respond to a police request, the fact that people do so, and do so

without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Id.*

After agreeing to be interviewed, Plaintiff sat for eight hours of questioning. Although she did not think she could leave, the Virginia Defendants never said or did anything to create that impression. She was not forced to stay. A consensual encounter between a police officer and a citizen can be transformed into a seizure "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 215. Towards the end of the interview, after Plaintiff had locked herself in a bathroom, the Virginia Defendants asked if she wanted to continue the interview and she said she did. Clearly, a reasonable person would have felt free to leave because the Virginia Defendants offered Plaintiff the opportunity to do so. At no time did the Virginia Defendants prevent Plaintiff from leaving or indicate she could not leave. Further, when the interview ended, Plaintiff freely walked out. No seizure occurred.

However, Plaintiff did not make it to the building's exit without opposition. Defendant Oelschlegel seized Plaintiff by grabbing her sweater as she went down the stairs to exit the building. This was only a momentary seizure, just long enough for Plaintiff to ask if she was being arrested before Defendant Oelschlegel let go, but it was a seizure nonetheless. Plaintiff's freedom of movement was terminated albeit briefly. The Fourth Amendment governs seizures that involve only a brief detention. *Mendenhall*, 446 U.S. at 551; *accord United States v. Sugrim*, 732 F.2d 25, 28 (2d Cir. 1984) ("A detention no matter how momentary is a seizure under the Fourth Amendment."); *see Murray v. Metro. Gov't of Nashville*, No. 3:06-0570, 2007 U.S. Dist. LEXIS 37071, *14, 2007 WL 1521004, *4 (M.D. Tenn. May 21, 2007) (momentary seizure is a seizure).

Another seizure occurred on the bus, where the Chattanooga Defendants, with Defendant Oelschlegel's help, handcuffed Plaintiff and carried her off the bus. This encounter fits in with more traditional seizures in that Plaintiff's freedom of movement was clearly terminated for a substantial period of time.

Defendant Hess did not participate in either seizure, so the Fourth Amendment claim against him will be **DISMISSED**. Now that the Court has determined Plaintiff was seized twice, it will determine whether those seizures involved false arrest and excessive force.

### a. False arrest

Plaintiff contends she was falsely arrested in violation of the Fourth Amendment (Doc. No. 86, p. 5). In response, the Virginia Defendants contend they never arrested Plaintiff and Defendant Oelschlegel's actions (helping apprehend Plaintiff on the bus) were reasonable (Doc. No. 75, pp. 12-14). The Chattanooga Defendants also contend their actions were reasonable (Doc. No. 83, p. 19). Under the Fourth Amendment, any arrest requires probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir. 2000). As long as there is probable cause to make an arrest, a warrantless arrest does not violate the Fourth Amendment. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *United States v. Strickland,* 144 F.3d 412, 415 (6th Cir.1998) (quoting *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988)).

The same probable cause standard applies to seizures for the purposes of mental health evaluations, which require probable cause the subject is a danger to herself or others. *Fisher v. Harden*, 398 F.3d 837, 842-43 (6th Cir. 2005); *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003). Without probable cause, police may not physically restrain an individual merely to assess his mental

health. *Fisher*, 398 F.3d at 842 (rejecting contention reasonable suspicion is sufficient).[8] Probable cause in this context "requires only a 'probability or substantial chance' of dangerous behavior, not an actual showing of such behavior." *Id.* at 843. Therefore, to prevail on her Fourth Amendment false arrest claim, Plaintiff must prove she was seized without probable cause. *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir.1997).

In determining probable cause, the Court must take account of the "common sense and law enforcement experience" officers use in assessing facts at the time of the arrest. *Evans v. Detlefsen*, 857 F.2d 330, 334 (6th Cir. 1988). Probable cause may be based on police observations and reliable hearsay and may be established from the collective knowledge of the police rather than solely from facts known to the officer making the arrest. *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989). "The judicial determination of probable cause involves evaluating the historical facts leading up to the arrest, and whether those facts, viewed by an 'objectively reasonable police officer,' satisfy the legal standard of probable cause." *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)) (internal citation and quotation marks omitted). The officer's actual motives are irrelevant to a probable cause determination. *Fisher*, 398 F.3d at 843 (citing *Criss*, 867 F.2d at 262).

Two Sixth Circuit cases involving seizures for the purposes of mental health evaluations shed light on the probable cause standard. In *Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997), a police officer had probable cause the plaintiff was attempting to injure himself or commit suicide because

---

[8]The Sixth Circuit noted there is a "possibility that under certain emergency or exigent circumstances, where officers have reasonable suspicion (but not probable cause) to believe that it is imminent that an individual may commit suicide unless the officers intervene, a seizure may be constitutionally permissible." *Fisher*, 398 F.3d at 847 n.5. Such a possibility is inapplicable here, where there is no indication Plaintiff was about to commit suicide.

the plaintiff had told a mental health worker he was ingesting pills to commit suicide and the officer discovered twenty pills to be missing and noticed the plaintiff appeared intoxicated and depressed. *Id.* at 1102. In contrast, the police in *Fisher* did not have probable cause because facts that were evident upon the officers' arrival at the scene contradicted information from a "911" caller who described the plaintiff as suicidal. *Fisher*, 398 F.3d at 843-44.

In this case, in the first seizure, Defendant Oelschlegel grabbed Plaintiff as she tried to leave the building. Defendant Oelschlegel's stated reason is she wanted Plaintiff to ride home with her and Defendant Hess. Defendant Oelschlegel articulated no reason to believe Plaintiff committed a crime or was dangerous to herself; therefore, she had no probable cause to seize Plaintiff.

In the second seizure, when Plaintiff was handcuffed and carried off the bus, Defendant Oelschlegel and the Chattanooga Defendants contend they were concerned for Plaintiff's safety. The Virginia Defendants contend Plaintiff was at risk of getting hit by a car or getting into a stranger's car (Doc. No. 75, p. 11). However, construing the facts in the light most favorable to Plaintiff, she was sitting on a bus, crying but minding her own business. She presented no harm to herself or others. Any risk to Plaintiff from being in the street had passed. This is especially true because Plaintiff claims she was merely asking a passing car about the bus schedule. Defendant Oelschlegel knew Plaintiff had just undergone hours of intense, accusatory questioning and Plaintiff had stated repeatedly she wanted to be left alone. Despite Defendant Oelschlegel's good intentions, the probable cause determination is objective, and Defendant Oelschlegel had no probable cause to seize Plaintiff.

The same is true for the Chattanooga Defendants. They responded to a call saying that Plaintiff was a danger to herself and needed to be taken into protective custody. Even after learning

the source of this information was out-of-state police officers, the Chattanooga Defendants did not have probable cause to seize Plaintiff. When they boarded the bus, they saw Plaintiff crying but not harming herself or anyone else. They should have recognized they lacked probable cause to force Plaintiff off the bus. As in *Fisher*, the officers needed to incorporate the facts evident upon their arrival to evaluate probable cause and recognize it was lacking.

In addition to the probable cause requirement, Tennesse has set rules for when someone may be detained without a warrant for an emergency mental health evaluation. Tenn. Code Ann. § 33-6-401 specifies two conditions for emergency detention: "(1) a person has a mental illness or serious emotional disturbance, and (2) the person poses an immediate substantial likelihood of serious harm because of the mental illness or serious emotional disturbance."[9] Assuming, arguendo, Plaintiff's crying was a "serious emotional disturbance" as defined in the first condition, Plaintiff's behavior did not meet the requirements of the second condition, which requires "substantial likelihood of serious emotional harm."[10] Thus, in addition to lacking probable cause, the Chattanooga Defendants and Defendant Oelschlegel did not comply with the state statute specifying when someone may be

---

[9]Those authorized to detain under this statute include "officer[s] authorized to make arrests in the state." Tenn. Code Ann. § 33-6-402. Even if Plaintiff could have been properly detained under the statute, she could not have been detained by Defendant Oelschlegel, who was not authorized to make arrests in Tennessee.

[10]"Substantial likelihood of serious emotional harm" is when "(A) a person has threatened or attempted suicide or to inflict serious bodily harm on such person, or (B) the person has threatened or attempted homicide or other violent behavior, or (C) the person has placed others in reasonable fear of violent behavior and serious physical harm to them, or (D) the person is unable to avoid severe impairment or injury from specific risks." Tenn. Code Ann. § 33-6-501(1). The section also requires a substantial likelihood that such harm will occur unless the person is placed under involuntary treatment. Tenn. Code Ann. § 33-6-501(2). Plaintiff does not meet any of these conditions. The fact that the Virginia Defendants believed Plaintiff attempted to commit suicide at some unspecified earlier time does not qualify; certainly, there was no substantial likelihood of a suicide attempt occurring again.

detained for an emergency mental health evaluation.

In a § 1983 claim, the existence of probable cause is a question for the jury to decide at trial unless there is only one reasonable determination possible. *Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007); *Crockett v. Cumberland College*, 316 F.3d 571, 581 (6th Cir. 2003); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). Construing the facts in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendant Oelschlegel and the Chattanooga Defendants had probable cause, and therefore summary judgment is inappropriate on this claim.

### b. Excessive force

Plaintiff also contends excessive force was used against her (Doc. No. 86, p. 4). The Virginia Defendants contend they had to make quick decisions to protect Plaintiff (Doc. No. 75, pp. 10-12) and the Chattanooga Defendants contend they used the minimal force necessary (Doc. No. 83, p. 19).

There is a cause of action under § 1983 for excessive force used to make an arrest. *Graham*, 490 U.S. at 397; *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004). Claims of excessive force are analyzed under a reasonableness standard based on "the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 395-96. The Court must examine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*; *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007). This requires balancing Plaintiff's Fourth Amendment interests against the government's interests. *Graham*, 490 U.S. at 396; *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). In evaluating those interests, the Supreme Court has directed courts to look at factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Shreve v. Jessamine County Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006); *Burchett*, 310 F.3d at 944. This is effectively an examination of the totality of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); *Griffith*, 473 F.3d at 656.

There is a "built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Graham*, 490 U.S. at 396; *accord Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Burchett*, 310 F.3d at 944. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Graham*, 490 U.S. at 396. The reasonableness inquiry allows for the fact that police officers must often make split-second judgments about the necessary amount of force. *Id.*

In the first seizure, Defendant Oelschlegel grabbed Plaintiff and then released her. It was an extremely minor use of force and there was no injury suffered. The Sixth Circuit does not require that excessive force claims allege excessive marks or extensive physical damage. *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999) (upholding excess force claim where plaintiff was struck and thrown against a couch); *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996) (upholding excessive force claim where officers held plaintiff's wrist and wrenched her finger for five minutes, causing extreme pain, so as to remove plaintiff's wedding ring). But neither of those cases support a claim of excessive force in this case, where Defendant Oelschlegel merely grabbed Plaintiff's sweater, which is almost no force at all. Although injury is not required to support an excessive force claim, there must be sufficient force. *De minimus* force is insufficient. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000); *Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999); *Murray*, 2007 WL 1521004, at *9, 2007 U.S. Dist. LEXIS 37071, at *30. The extremely

minor force here does not qualify as excessive force.

However, taking the facts in the light most favorable to Plaintiff, there was excessive force used on the bus, where the Chattanooga Defendants repeatedly used a taser on Plaintiff as she sat. Her attempts to resist the seizure did not warrant the repeated application of the taser. At worst, Plaintiff was believed to be a potential harm to herself. She was not accused of a crime and was not a risk to the officers or other passengers. To the extent she was resisting arrest, it was because she had done nothing wrong and wanted to be left alone. In those circumstances, there is a genuine dispute of material fact as to whether the force used was excessive. By participating with the Chattanooga Defendants, Defendant Oelschlegel is also liable for excessive force. Even though the Chattanooga Defendants and Defendant Oelschlegel believe they had good intentions in pulling Plaintiff from the bus, officers' good intentions do not make their actions constitutional. *Graham*, 490 U.S. at 397.

To summarize the Fourth Amendment claims, there was no constitutional violation in the course of the Virginia Defendants' interview of Plaintiff; Plaintiff has a constitutional claim against Defendant Oelschlegel for false arrest but not excessive force resulting from grabbing Plaintiff as she left the building; and Plaintiff has a constitutional claim against Defendant Oelschlegel and the Chattanooga Defendants for false arrest and excessive force for being seized on the bus.

### 3. Qualified immunity

Both the Virginia Defendants and Chattanooga Defendants contend their actions were reasonable and thus they are entitled to summary judgment because they have qualified immunity (Doc. No. 75, pp. 18-23; Doc. No. 83, pp. 16-19). The Court will examine whether Defendant Oelschlegel and the Chattanooga Defendants are protected by qualified immunity because the Court

has just determined Plaintiff properly alleged the deprivation of her constitutional rights by those defendants.[11] *County of Sacramento*, 523 U.S. at 842 n.5; *Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007). Plaintiff has the burden of showing the defendants are not entitled to qualified immunity. *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ("Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.")). Despite bearing the burden, Plaintiff's briefs do not address qualified immunity.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier*, 533 U.S. at 200 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It balances the ability for plaintiffs to seek redress for government officials' violations of constitutional guarantees against "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects government officials from liability if they are performing discretionary functions as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be "clearly established in a particularized sense" such that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fox*, 489 F.3d at 235; *accord Saucier*, 533 U.S. at 202.

Defendant Oelschlegel is entitled to qualified immunity for grabbing Plaintiff as she exited the building. Plaintiff has not presented any argument, and the Court can find none, indicating that

---

[11]Since Defendant Hess did not commit a constitutional violation, there is no need to analyze whether he is protected by qualified immunity.

such a brief seizure is a clearly established constitutional violation in a particularized sense. A right is clearly established when there is binding precedent by the Supreme Court, the court of appeals or the district court. *Ohio Civil Serv. Employees Ass'n. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). "A mere handful of decisions of other circuit and district courts. . . cannot form the basis for a clearly established constitutional right." *Fisher*, 398 F.3d at 845-46. There is no Supreme Court case or case from the Sixth Circuit or this district holding that a de minimus seizure is a seizure. Accordingly, Plaintiff has not established that Defendant Oelschlegel violated a clearly established right by momentarily grabbing her.

However, Defendant Oelschlegel and the Chattanooga Defendants are not entitled to qualified immunity for the false arrest of Plaintiff on the bus because there is clearly established law in the Sixth Circuit prohibiting mental health seizures without probable cause. *Fisher*, 398 F.3d 837, 846 (6th Cir. 2005) (citing *Monday*, 118 F.3d at 1102 ("The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others.")).[12]

Qualified immunity also protects an officer who "reasonably but mistakenly concludes that probable cause is present." *Anderson*, 483 U.S. at 641 (1987); *accord Saucier*, 553 U.S. at 206. Construing the facts in the light most favorable to Plaintiff, the mistake made by Defendant Oelschlegel and the Chattanooga Defendants was not reasonable. Despite their concern for Plaintiff's well-being, they failed to accept that Plaintiff is an adult who had not committed any

---

[12]Although Defendant Oelschlegel is a police officer in Virginia, she is bound by the law of this circuit since her actions took place here. Even so, the Fourth Circuit, in which Virginia is located, has also held that it is clearly established law as of at least 1998 that police may not detain someone for an emergency mental evaluation unless they have probable cause. *Bailey*, 349 F.3d at 741.

crime and was not mentally disturbed and merely wanted to be free of the police as she cried. It was unreasonable for them to think they had probable cause to seize Plaintiff in those circumstances.

In addition, Defendant Oelschlegel and the Chattanooga Defendants are not entitled to qualified immunity on the excessive force theory because the right to be free from excessive force during arrest is clearly established constitutional law. *Gardenhire*, 205 F.3d at 315; *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir. 1999). Qualified immunity also protects officers who mistakenly believe the amount of force used is reasonable. *Saucier*, 533 U.S. at 206. But it is not reasonable the officers would think they could repeatedly use their tasers to pull Plaintiff off the bus despite slight resistance on her part when they clearly outnumbered her and had no reason to believe she was dangerous.

In summary, Defendant Oelschlegel is entitled to qualified immunity for the seizure that occurred as Plaintiff left the building; therefore, Plaintiff has no Fourth Amendment claim resulting from that incident. However, Defendant Oelschlegel and the Chattanooga Defendants are not entitled to qualified immunity with regards to the seizure of Plaintiff on the bus, so Plaintiff retains her Fourth Amendment claim for false arrest and excessive force against Defendant Oelschlegel and the Chattanooga Defendants.

### 4. Section 1983 claim against the City

The City moved for summary judgment as to Plaintiff's § 1983 claims on the grounds that there is no evidence the City violated Plaintiff's constitutional rights (Doc. No. 83, p. 9).[13]

---

[13]Although not expressly named as a defendant, Prince William County is a defendant in this case because of the official capacity claims against the Virginia Defendants. *See infra* Part III.B.1. Prince William County did not move for summary judgment on the § 1983 claim against it, so that claim remains for trial.

Although § 1983 imposes liability on "any person," the statute applies to municipalities like the City. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). There are two issues raised when a § 1983 claim is asserted against a municipality: (1) whether the plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Because the Court has just found a constitutional violation by the Chattanooga Defendants, the issue is whether the City is liable for such violation. *Bukowski v. City of Toledo*, 326 F.3d 702, 712-13 (6th Cir. 2003)

A municipality is not liable merely for employing a wrongdoer. *Monell*, 436 U.S. at 691; *Gregory v. Shelby County*, 220 F.3d 433. Rather, a municipality is only liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694; *accord Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006). This requires "a direct causal link between the policy and the alleged constitutional violation. *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (internal quotations omitted). Therefore, Plaintiff must show she was injured by execution of the City's official policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). Since Plaintiff also alleges the Chattanooga Defendants were inadequately trained, the inadequate training can only be characterized as the cause of a constitutional tort if its amounts to "deliberate indifference" to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiff, in her untimely response, admits the City "does not have a policy that allows the use of excessive force by its officers," but Plaintiff contends better training and supervision would have prevented this incident (Doc. No. 90, p. 8). However, Plaintiff points to no evidence their

training and supervision are lacking, nor any evidence bad training is the result of the City's "deliberate indifference." Plaintiff also identifies no evidence a policy or custom of the City caused her injury. In contrast, the City points to evidence it has proper policies and customs (Doc. No. 82, affidavits of Stan Allen, Lon Eilders, Mike Mathis). Since Plaintiff cannot support any constitutional violation by the City, her § 1983 claim against the City will be **DISMISSED.**[14]

### 5. Fifth, Eighth, and Fourteenth Amendments

Plaintiff alleges violations of her rights under the Fifth, Eight, and Fourteenth Amendments to the Constitution, but does not explain how these amendments apply to these facts. Plaintiff was not subject to government procedure and was not a prisoner; thus, there is no cognizable violation of the Fifth or Eighth Amendments. As to the Fourteenth Amendment, Plaintiff may have asserted such claim because the Fourteenth Amendment makes the Fourth Amendment applicable to local governments. To the extent Plaintiff raised a Fourteenth Amendment claim under the substantive due process clause, a claim should not be analyzed under such clause if the claim arises under another constitutional amendment, and it has already been determined that Plaintiff has a viable claim under the Fourth Amendment. *County of Sacramento*, 523 U.S. at 843; *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002). Accordingly, Plaintiff's Fifth, Eighth, and Fourteenth Amendment claims will be **DISMISSED**.

### B. State law claims

In addition to her constitutional claims, Plaintiff alleges "all defendants" committed common

---

[14]The City also seeks summary judgment on Plaintiff's claim for punitive damages under § 1983. The City correctly argues Plaintiff is not entitled to punitive damages in a § 1983 action against a municipality. *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); *Estate of Callahan v. Detroit*, 863 F.2d 47 (6th Cir. 1988). This point is moot since the § 1983 claim against the City will be dismissed.

law assault, battery, false arrest, false imprisonment, and negligence.  Before addressing those torts, the Court must first address whether the Virginia Defendants in their official capacities enjoy immunity.

### 1.  Sovereign immunity

Although the Virginia Defendants' employer, Prince William County ("County"), is not named as a defendant in this case, the Virginia Defendants have been sued in their official capacities.  Official-capacity suits are merely another way of pleading an action against the governmental entity of which the defendant is an official, employee, or agent.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir. 1992).  Thus, the official capacity suits seek to impose liability on the County.[15]  The County contends sovereign immunity protects it from tort suits (Doc. No. 75, p. 24). Plaintiff argues such protection does not exist under Tennessee law (Doc. No. 86, p. 6).

The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Unless a state has waived its immunity or Congress has validly abrogated the state's immunity, neither a State nor agencies acting under its control may be subject to suit in federal court. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

Political subdivisions of a state do not enjoy sovereign immunity unless they function as an

---

[15]Liability for the government entity requires the entity to have received notice and an opportunity to respond.  *Brandon*, 469 U.S. at 472 n.20.  Since the Virginia Defendants' motion for summary judgment addresses the County's liability and the county attorney has been admitted pro hac vice to represent the Virginia Defendants in this case (Doc. Nos. 18, 20), the Court presumes the County has received notice and an opportunity to respond.

arm of the state. *Gottfried v. Medical Planning Servs.*, 280 F.3d 684, 692 (6th Cir. 2002). In Virginia, counties are regarded as arms of the state, and federal and state courts have repeatedly held Virginia counties are protected by sovereign immunity. *Scearce v. Halifax County*, Nos. 95-2307, 95-2308, 1996 WL 500948, *2, 1996 U.S. App. LEXIS 23280, *5 (4th Cir. Sept. 5, 1996) (unpublished); *Cruz v. Bd. of Supervisors*, 1993 U.S. App. LEXIS 187, *10 (4th Cir. Jan. 7, 1993) (unpublished); *Stanley v. Gray*, No. 2:06CV00031, 2007 WL 445366, *2 n.5, 2007 U.S. Dist. LEXIS 9508, *6 n.5 (W.D. Va. Feb. 11, 2007); *Daley v. Ferguson*, No. 3:95cv304, 1995 U.S. Dist. LEXIS 14507, *5-6 (E.D. Va. June 26, 1995) (citing *Mann v. County Bd.*, 98 S.E.2d 515, 518 (Va. 1957)). Accordingly, the state-law claims against the Virginia Defendants in their official capacities will be **DISMISSED**.

### 2. Assault, battery, false arrest, and false imprisonment

Plaintiff contends all defendants committed common law assault, battery, false arrest and false imprisonment against her. The Virginia Defendants contend Defendant Hess did not touch, harm, or direct anyone to touch Plaintiff and Defendant Oelschlegel's actions were undertaken to protect Plaintiff, not harm her (Doc. No. 75, pp. 14-17). The Chattanooga Defendants contend they used only reasonable force (Doc. No. 83, pp. 22-24).

Assault is an "intentional attempt or the unmistakable appearance of an intentional attempt to do harm to another person, and the present ability or the unmistakable appearance of the present ability to do that harm." T.P.I. 3 CIVIL § 8.01; *Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995). Battery is "any intentional, unlawful and harmful (or offensive) physical contact by one person with the person of another." T.P.I. 3 CIVIL § 8.02; *Thompson v. Williamson County*, 965 F.Supp. 1026, 1038 (M.D. Tenn. 1997), *aff'd*, 219 F.3d 555 (6th Cir. 2000); *Raines*, 909 F.

Supp. at 1083.

False arrest requires Plaintiff to prove she was arrested without probable cause. *Lee v. Ritter*, No. 1:02-CV-282, 2005 U.S. Dist. LEXIS 34988, *57-58, 2005 WL 3369616, *20 (E.D. Tenn. Dec. 12, 2005); *McLaughlin v. Smith*, 412 S.W.2d 21, 26 (Tenn. Ct. App. 1966). False imprisonment requires Plaintiff to prove: (1) she was restrained or detained against her will by a defendant, and (2) the restraint or detention was unlawful. *Bryant-Bruce v. Vanderbilt Univ., Inc.,* 974 F.Supp. 1127, 1145 (M.D. Tenn. 1997); *Coffee v. Peterbilt of Nashville, Inc.,* 795 S.W.2d 656, 659 (Tenn. 1990). False imprisonment also requires Plaintiff prove Defendant acted without probable cause. *Brown v. SCOA Indus., Inc.,* 741 S.W.2d 916, 920 (Tenn. Ct. App. 1987).

When Plaintiff was interviewed by the Virginia Defendants, no tort occurred. There was no physical contact with Plaintiff, she was not arrested, and she was not restrained against her will. "[S]ubmission to the mere verbal direction of another, unaccompanied by force or by threats of any character, cannot constitute a false imprisonment." *Newsom v. Thalhimer Bros.*, 901 S.W.2d 365, 368 (Tenn. Ct. App. 1994). When Defendant Oelschlegel grabbed Plaintiff on Plaintiff's way out of the building, she did commit the torts at issue here. The same is true on the bus, where Defendant Oelschlegel and the Chattanooga Defendants each made harmful contact with Plaintiff and participated in seizing and restraining her against her will. Whether that force or restraint was lawful is a question of whether Defendant Oelschlegel and the Chattanooga Defendants had probable cause. As with Plaintiff's constitutional claims, the existence of a genuine dispute of material fact as to whether Defendant Oelschlegel and the Chattanooga Defendants had probable cause to seize Plaintiff precludes the granting of summary judgment. *See Thompson*, 965 F.Supp. at 1038. Accordingly, the motions for summary judgment by Defendant Oelschlegel and the Chattanooga

Defendants on claims of assault, battery, false arrest, and false imprisonment will be **DENIED**.

Defendant Hess never touched, restrained, or attempted to harm Plaintiff, so Defendant Hess's motion for summary judgment on the assault, battery, false arrest and false imprisonment claims will be **GRANTED**.

As to the City, the Tennessee Governmental Tort Liability Act immunizes governmental entities such as the City from suit except for various exceptions, none of which are applicable here. Tenn. Code Ann. § 29-20-21.  Accordingly, the City's motion for summary judgment on the assault, battery, false arrest, and false imprisonment claims will be **GRANTED**.

### 3. Negligence

Plaintiff claims the defendants' actions constituted negligence *per se* in violation of several criminal statutes: Tenn. Code Ann. § 39-13-101, prohibiting assault;[16] § 39-13-102, prohibiting aggravated assault;[17] § 39-13-302, prohibiting false imprisonment;[18] and § 39-16-403, prohibiting

---

[16]A person commits assault who:
(1)  Intentionally, knowingly or recklessly causes bodily injury to another;
(2)  Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.
Tenn. Code Ann. § 39-13-101.

[17]A person commits aggravated assault who:
(1)  Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
    (A)  Causes serious bodily injury to another; or
    (B)  Uses or displays a deadly weapon; or
(2)  Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
    (A)  Causes serious bodily injury to another; or
    (B)  Uses or displays a deadly weapon.
Tenn. Code Ann. § 39-13-102.

[18]A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty.  Tenn. Code Ann. §

official oppression[19] (Doc. No. 1, p. 6, pt. 9). The Virginia Defendants move for summary judgment on the basis that the underlying criminal statutes do not provide private rights of action (Doc. No. 75, pp. 14-18) and also argue the Virginia Defendants should be protected by Tennessee governmental immunity (*id*. at pp. 23-24). The Virginia Defendants misconstrue Plaintiff's claim. Plaintiff alleges the defendants are in violation of various statutes and such violations constitute negligence *per se*; therefore, Plaintiff is not asserting a private cause of action under the statute itself. *See Corvin v. Bice*, No. 1:05-CV-219, 2007 U.S. Dist. LEXIS 17314, *22, 2007 WL 776501, *7 (E.D. Tenn. Mar. 9, 2007).

Plaintiff must demonstrate five elements to establish a claim for negligence: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care [a breach of the duty owed]; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation." *Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc*., 447 F.3d 923, 932 (6th Cir. 2006) (citing *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993)). "The doctrine of negligence *per se* permits a plaintiff to satisfy the breach element of a negligence action by substituting the violation of a statutorily imposed duty for the reasonable person standard." *Brown v. City of Memphis,* 440 F.Supp.2d 868, 875-76 (W.D. Tenn. 2006) (citing *Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994)). "The

---

39-13-302.

[19]A public servant acting under color of office or employment commits an offense who:
(1) Intentionally subjects another to mistreatment or to arrest, detention, stop, frisk, halt, search, seizure, dispossession, assessment or lien when the public servant knows the conduct is unlawful; or
(2) Intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful.
Tenn. Code Ann. § 39-16-403.

Tennessee Supreme Court has, over the years, been quick to invoke the negligence per se doctrine with regard to violations of penal statutes designed to protect the public." *Rains v. Bend of the River*, 124 S.W.3d 580, 592 (Tenn. Ct. App. 2003) (citing *Brookins v. The Round Table*, 624 S.W.2d 547, 550 (Tenn. 1981)). Accordingly, Plaintiff may assert that the defendants' alleged violations of the Tennessee criminal statutes constitutes negligence *per se*.

The City contends it is entitled to summary judgment on Plaintiff's negligence claim (Doc. No. 83, p. 15) under the Tennessee Governmental Tort Liability Act ("GTLA"), which protects governmental entities from suits unless the GTLA waives immunity or the governmental entity has consented to suit. *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001); *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997); *see generally* Tenn. Code Ann. §§ 29-20-101 to -407. Municipalities in Tennessee, such as the City, are included as governmental entities. Tenn. Code. Ann. § 29-20-102(3)(A). The GTLA removes immunity from governmental entities for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." § 29-20-205. However, the statute specifically exempts claims for false arrest, false imprisonment, and civil rights. § 29-20-205(2). The legislature's creation of enumerated exceptions indicates those exceptions should be strictly limited. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001) (rejecting a blanket exception to liability for negligence resulting from intentional torts not enumerated in the statute); *Fortenberry v. George*, No. E2000-02984-COA-R3-CV, 2002 WL 1446675, *6, 2002 Tenn. App. LEXIS 466, *21 (Tenn. Ct. App. July 3, 2002). Assault is not listed as an exception in the statute. § 29-20-205(2). Thus, governmental entities are not immune from negligence claims based on allegations of assault. *Fortenberry*, 2002 WL 1446675, at *7, 2002 Tenn. App. LEXIS 466, at *22. Plaintiff has presented evidence the Chattanooga Defendants

violated the assault statute. Since the Chattanooga Defendants are employees of the City, the City's immunity is removed as to the negligence claim. Accordingly, the City's motion for summary judgment on the negligence claim will be **DENIED**.

The Chattanooga Defendants contend they are entitled to summary judgment on Plaintiff's negligence claim (Doc. No. 83, p. 14) in accordance with Tenn. Code Ann. § 29-20-310(b), which states, "No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter." In other words, since the City's immunity is removed, the individual employees are not liable. The Chattanooga Defendants are correct: because the City's immunity is removed, the Chattanooga Defendants' motion for summary judgment on the negligence claim will be **GRANTED**.

The Virginia Defendants seek the same protection as the Chattanooga Defendants relying on § 29-20-310(b) of the GTLA . However, they are employees of a governmental entity in Virginia and the statute is limited by its terms to political subdivisions of Tennessee. § 29-20-102(3). Even if this Court accommodated the Virginia Defendants' request by extending the GTLA to a political subdivision of Virginia, the Virginia Defendants would not be immune because the governmental entity which employs them has not waived immunity (as discussed earlier, their employer, Prince William County, has invoked its sovereign immunity). Although the Virginia Defendants are not immune, Plaintiff has failed to provide evidence Defendant Hess violated any of the aforementioned statutes. Accordingly, Defendant Hess's motion for summary judgment on the negligence claim will be **GRANTED** and Defendant Oelschlegel's motion for summary judgment on the negligence claim will be **DENIED**.

### 4. Punitive damages

The City and Chattanooga Defendants contend they are entitled to summary judgment on Plaintiff's state-law claims for punitive damages (Doc. No. 83, pp. 20-22). To recover punitive damages, Plaintiff must prove by clear and convincing evidence that a defendant acted (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 328 (Tenn. 1996). Since the evidence presents a genuine dispute of material fact, their motion for summary judgment on punitive damages will be **DENIED**.

As to the City, although the GTLA does not explicitly prohibit punitive damages, the Tennessee Supreme Court has held the GTLA does not allow for punitive damages against governmental entities on negligence claims. *Tipton County Board of Education v. Dennis*, 561 S.W.2d 148, 152 (Tenn. 1978)*; see also Hobson v. City of Memphis*, No. 04-2691-DP, 2005 WL 3434636, *6, 2005 U.S. Dist. LEXIS 35756, *18 (W.D. Tenn. Dec. 13, 2005). Therefore, Plaintiff may not recover punitive damages against the City for its employees' negligence. Accordingly, the City's motion for summary judgment on punitive damage will be **GRANTED** as to Plaintiff's negligence claim against the City.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** the Virginia Defendants' motion for summary judgment (Doc. No. 74), and will **GRANT IN PART** and **DENY IN PART** the motion for summary judgment filed by the Chattanooga Defendants and City (Doc. No. 82). The Court will **DISMISS** Defendant Hess from this case, **DISMISS** claims of Fifth, Eighth, and Fourteenth Amendment violations against all defendants, **DISMISS** the Fourth Amendment claim against the City, **DISMISS** state-law claims against Defendant Oelschlegel in

her official capacity, **DISMISS** common law assault, battery, false arrest and false imprisonment claims against the City, and **DISMISS** the negligence claim against Defendants Wagnon, Morris, and Jennings, and **DISMISS** the state-law punitive damages claim against the City.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**